# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE AT GREENEVILLE

| | |
|---|---|
| **DERRICK LEWIS,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| vs. ) | Civil Action No. 2:20-CV-00114 |
| ) | |
| **KINGSPORT POLICE DEPARTMENT, et al.** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Come now the Defendants, Officer Ben DeGreen, Officer Jessee Altman and Officer Lucas Hensley (the "Officers"), by and through counsel, and submit the following Memorandum of Law in Support of Defendants' Motion for Summary Judgment and would show unto the Court as follows.

### I. FACTS

Plaintiff filed a § 1983 law suit against Officers Hensley, DeGreen, and Altman, individually, alleging the three (3) Officers utilized excessive force against him in violation of the Fourth Amendment of the United States Constitution. *Amended Complaint*, Document 19, Page ID # 80-81. Specifically, this lawsuit results from events which occurred on or about July 4, 2019. *Affidavit of Trooper Michael Draine (Hereafter Draine Affidavit)* ¶ *3*. On the date in question Trooper Draine, Tennessee Highway Patrol, placed Derrick Lewis under arrest for an outstanding warrant and was transporting him to Sullivan County Detention Center. *Draine Affidavit,* ¶ 4. Mr. Lewis is approximately 6' 3" and weighs 240 pounds. *Affidavit of Officer Ben DeGreen (Hereafter DeGreen Affidavit)* ¶ 8. As Trooper Draine was traveling on East Stone Drive, Kingsport, Tennessee, Derrick Lewis knocked out the driver's side rear window to his

cruiser. *Draine Affidavit,* ¶ 6. He torqued his body so that he was able to move the handcuffs from behind his back to in front. *Draine Affidavit,* ¶ 7. He escaped from the cruiser and fled on foot. *Draine Affidavit,* ¶ 8. Another individual named Timothy Light was also in the cruiser and escaped as well, so Trooper Draine radioed for backup and pursued Mr. Light. *Draine Affidavit,* ¶ 9. While fleeing, Mr. Lewis entered the truck bed of a citizen's pickup truck; the driver refused to accelerate. *Draine Affidavit*, ¶ 10. Mr. Lewis exited and continued running down East Stone Drive, eventually entering the premises of a gas station located at 1300 East Stone Drive. *Draine Affidavit,* ¶ 10*, Affidavit of Officer Lucas Hensley (Hereafter Hensley Affidavit)* ¶ 5*, DeGreen Affidavit,* ¶ 5.

There, Officer Hensley arrived first and observed Mr. Lewis moving around freely with his hands cuffed in front. *Officer DeGreen Dashcam 3:06; Hensley Affidavit,* ¶ 5. He exited his cruiser and drew his pistol. *Hensley Affidavit,* ¶ 5. He instructed Mr. Lewis to get on the ground and Mr. Lewis refused. *Hensley Affidavit,* ¶¶ 5-6. Moments later, Officer DeGreen arrived on the scene and, observed Mr. Lewis was freely moving around with his hands cuffed in front of his body. *Hensley Affidavit,* ¶¶ 6-7*, DeGreen Affidavit* ¶ 6*, DeGreen Dashcam 3:10.* Mr. Lewis continued to disobey commands, so he was taken to the ground by Officer DeGreen. *Hensley Affidavit,* ¶¶ 6-7*, DeGreen Affidavit* ¶ 6*, DeGreen Dashcam 3:14.* After Mr. Lewis is on the ground, Officers Hensley and DeGreen radioed for backup. *Hensley Affidavit,* ¶¶ 6-7*, DeGreen Affidavit* ¶ 6*, DeGreen Dashcam 3:22.* Officer Hensley attempted to free one of Mr. Lewis' hands to securely place him into custody. *Hensley Affidavit,* ¶ 8. Derrick Lewis began to resist; specifically, he attempted to push himself off the ground and began kicking and flailing his body. *Hensley Affidavit,* ¶ 9*, DeGreen Affidavit* ¶ 6*, DeGreen Dashcam 3:38.* As a result of Mr. Lewis' actions and movement, he knocked Officer Hensley off and to the ground. *Hensley Affidavit,* ¶ 10*, DeGreen Affidavit* ¶ 7*, DeGreen Dashcam 3:40.* Officer DeGreen drew his taser and "drive

2

stunned" Mr. Lewis two (2) times, one on the left upper back and a second time on the right upper back. *Hensley Affidavit,* ¶ 10*, DeGreen Affidavit* ¶ 7*, Taser Report of Officer Ben DeGreen.* As this was unfolding, Officer Altman arrived to the scene. *Hensley Affidavit,* ¶ 10*, DeGreen Affidavit* ¶ 7*, Affidavit of Officer Jesse Altman (hereafter Altman Affidavit)* ¶ 5*.* He was the third officer to arrive. *DeGreen Dashcam 3:40.* He ran up and landed on Mr. Lewis' head and torso with his elbow. *Hensley Affidavit,* ¶ 10*, DeGreen Affidavit* ¶ 7*, Affidavit of Officer Jesse Altman (hereafter Altman Affidavit)* ¶ 5. His attempt to diffuse the situation was unsuccessful, Mr. Lewis continued to resist the Officers' attempts to uncuff his hands from in front and securely place them behind his back. *Hensley Affidavit,* ¶ 11*, Affidavit of Officer Jesse Altman (hereafter Altman Affidavit)* ¶ 6*, Affidavit of Lieutenant Justin Quillin (Hereafter Quillin Affidavit)* ¶ 4*, DeGreen Dashcam 3:41.* Eventually, other Officers arrived to the scene. *DeGreen Dashcam 4:00.* Specifically, Lieutenant Justin Quillin arrives, exits his squad car and approaches Mr. Lewis from the right. *Quillin Affidavit* ¶ 4*, DeGreen Dashcam 4:00-4:08.* Based on Lt. Quillin's observations and the perceived resistance by Mr. Lewis, he delivered one knee strike to Mr. Lewis' right rib area. *Hensley Affidavit* ¶ 11*, Quillin Affidavit* ¶ 4*, DeGreen Dashcam 4:06.* Eventually, the Officers were able to uncuff Mr. Lewis, secure his hands behind his back, and he was transported to Sullivan County Detention Center. *Hensley Affidavit,* ¶ 11*, Altman Affidavit* ¶ 7*, Quillin Affidavit* ¶ 6*, DeGreen Affidavit* ¶ 11*, DeGreen Dashcam 6:27.*

## II.     LAW AND ARGUMENT

### A.     Summary Judgment Standard

A party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). "A fact is 'material' for purposes of summary judgment if proof of

that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

"In considering a motion for summary judgment, [the] Court construes all reasonable inferences in favor of the non-moving party." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnett*, 679 F.3d 443, 448 (6th Cir. 2012) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue of material fact." *Mosholder*, 679 F.3d at 448-49; *see also* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving part[y] [is] entitled to judgment as a matter of law and summary judgment is proper." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (*quoting Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012). When video is available, The Sixth Circuit Court of Appeals has concluded:

> Ordinarily in summary judgment appeals involving qualified immunity …, we view the facts in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). But there is "an added wrinkle in this case: existence in the record of [two] videotape[s] capturing the events in question." *Id.* In such a case—"where the police dash-cam video[s] . . . depict[] all of the genuinely disputed facts," *Standifer v. Lacon*, 587 F. App'x 919, 920 (6th Cir. 2014)—we "view[] the facts in the light depicted by the videotape[s]." *Scott*, 550 U.S. at 381.

*Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

### B. Defendant Officers Are Entitled to Qualified Immunity

Pursuant to the Doctrine of Qualified Immunity, government officials, including police officers, are not held liable for a plaintiff's claim for damages provided their conduct does not violate "clearly established statutory or constitutional rights which the reasonable officer in the defendant's position would have known." *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001). Determining whether government officials are entitled to qualified immunity requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff shows that a constitutional violation occurred; and (2) whether the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009); *Phillips v. Roan County*, 534 F.3d 531, 538 (6th Cir. 2008). The Court is free to consider the inquiry in whichever order it deems appropriate based on the issues presented. *Jones v. Burns*, 585 F.3d 971, 976 (6th Cir. 2009).

"Qualified immunity is an affirmative defense, and the defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Lanman v. Hinson*, 529 F.3d 673, 683 (6th Cir. 2008); *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002)). "Once the defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate" both the alleged conduct violated a Constitutional right, and the right was clearly established. *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)). "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*

### C. Whether the Three Officers Violated Lewis' Constitutional Rights

Claims that law enforcement officers use excessive force – deadly or not – in the course of any arrest, investigative stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395,
5

### B. Defendant Officers Are Entitled to Qualified Immunity

Pursuant to the Doctrine of Qualified Immunity, government officials, including police officers, are not held liable for a plaintiff's claim for damages provided their conduct does not violate "clearly established statutory or constitutional rights which the reasonable officer in the defendant's position would have known." *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001). Determining whether government officials are entitled to qualified immunity requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff shows that a constitutional violation occurred; and (2) whether the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009); *Phillips v. Roan County*, 534 F.3d 531, 538 (6th Cir. 2008). The Court is free to consider the inquiry in whichever order it deems appropriate based on the issues presented. *Jones v. Burns*, 585 F.3d 971, 976 (6th Cir. 2009).

"Qualified immunity is an affirmative defense, and the defendant bears the burden of pleading it in the first instance." *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Lanman v. Hinson*, 529 F.3d 673, 683 (6th Cir. 2008); *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002)). "Once the defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate" both the alleged conduct violated a Constitutional right, and the right was clearly established. *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011)). "If the plaintiff fails to establish either element, the defendant is immune from suit." *Id.*

### C. Whether the Three Officers Violated Lewis' Constitutional Rights

Claims that law enforcement officers use excessive force – deadly or not – in the course of any arrest, investigative stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395,

109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The reasonableness standard "requires the careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* at 396 (*quoting Tennessee v. Gardner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). "Factors the courts are to consider in balance are: [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* After the aforementioned factors are balanced, "the question is whether the totality of the circumstances justified a particular sort of seizure." *Id.* (*quoting Gardner*, 471 U.S. at 8-9).

In this case, Plaintiff alleges that he was seized pursuant to the Fourth Amendment. The issue, therefore, is whether or not officers' actions were reasonable under the circumstances. When multiple officers are alleged to have violated a plaintiff's Fourth Amendment rights, the conduct of each individual must be analyzed. *Binay v. Bittendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

1. **Actions of Officers Lucas Hensley and Jesse Altman.** In this case, Kingsport Police Officers were radioed for backup after Derrick Lewis escaped from Tennessee Highway Patrol custody. Defendants submit the crime at issue was moderately severe. *See T.C.A.* § 39-16-605 (Class A Misdemeanor or Class E Felony). Mr. Lewis managed to maneuver his hands in front of his body and he measures approximately 6' 3", weighing 240 pounds. Since his hands were in front of his body, Mr. Lewis was able to punch, push, or use the handcuffs as a potential choking device. Moreover, Mr. Lewis had demonstrated a propensity to flee from

officers as he escaped Tennessee Highway Patrol custody by kicking out the driver's side rear window. He attempted to leave the scene entirely by jumping in the back of a truck bed but the attempt was unsuccessful, so he ran down Stone Drive. In the video attached to this Motion, Mr. Lewis is moving about and you can visibly see him talking back to the officers. Based on the entire circumstances, officers could reasonably conclude Mr. Lewis posed a threat.

Plaintiff's Amended Complaint makes general allegations pertaining to all officers. Fortunately, there is video and Officer Lucas Hensley submits he did not violate Plaintiff's Fourth Amendment rights. In Mr. Lewis' Amended Complaint, Plaintiff alleges officers pointed a gun at him. Generally, drawing a weapon on an individual does not "necessarily mean that excessive force has been used." *Murray v. Metro Gov't of Nashville*, 2007 U.S. Dist. LEXIS 37071, 2007 WL 1521004 (M.D. Tenn. 2007) (*citing Anderson v. Antel*, 1999 U.S. App. LEXIS 21661, 1999 WL 717993 (6th Cir. 1999).

In this case, Lucas Hensley was the only officer who unholstered his pistol and told Mr. Lewis to get on the ground. Mr. Lewis failed to comply and was moving around. At this time specific moment, Lucas Hensley was the only officer on the scene and Mr. Lewis' hands, though cuffed, were in front of his body. Unlike being cuffed behind one's back, Mr. Lewis maintained the ability to punch or push others. Eventually, Officer DeGreen arrived on scene and Officer Hensley re-holstered his weapon without firing any shots. Once Mr. Lewis is taken to the ground, Officer Hensley aided Officer DeGreen in attempting to secure Mr. Lewis into custody. The video shows Officer Hensley reach to uncuff Mr. Lewis and he begins to kick and flail his body, at which point Officer Lucas Hensley is knocked off Mr. Lewis' back. He climbs back on and continues attempts to uncuff Mr. Lewis' hands, which were underneath his body. Based on the situation Officer Hensley encountered on the day in question, the Defendant submits he acted as any objectively reasonable officer would under the circumstances. After Mr. Lewis failed to

comply with his order to get on the ground, the situation escalated, but the video fails to indicate any objectively unreasonable actions taken by Officer Lucas Hensley. As a result, Officer Hensley submits he did not violate Plaintiff's constitutional rights.

Officer Altman was the third officer to arrive to the scene. Upon his arrival, he observed Mr. Lewis kicking and flailing, which knocked Officer Hensley off of Mr. Lewis. As he is running to provide assistance, Officer DeGreen is the only officer holding down a 6' 3", 240 pound male. Mr. Lewis had already shown a propensity to flee from the police, which is why Kingsport officers were radioed for assistance. The scenario Officer Altman faced is similar to *Schliewe v. Toro*, 138 Fed. App'x 715 (6th Cir. 2005). Officers responded to a group arguing. *Id.* Mr. Schliewe was bloodied and initially asked for treatment, but became uncooperative and began flailing his arms and made exaggerated movements. *Id.* He was arrested and transported to the police station, where he was left uncuffed and received medical treatment. *Id.* at 718. One officer walked by and opened the door to another room in the precinct, and plaintiff attempted to escape. *Id.* Officers moved to subdue him and one officer running to provide assistance punched the plaintiff in the face, breaking his jaw. *Id*. The Sixth Circuit Court of Appeals affirmed summary judgment on the excessive force allegation, concluding under the circumstances "punching someone may not be the best way to prevent his escape, it cannot be said that the blow was objectively unreasonable." *Id.* at 722.

The Sixth Circuit Court of Appeals noted Mr. Schliewe was not charged with a serious crime. *Id* at 722. However, they recognized "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* (quoting *Graham v. Connor*, 490 U.S.at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make

split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham* at 396-397.

In this case, when Officer Altman approached Mr. Lewis, it was entirely reasonable for him to think Mr. Lewis was flailing in an attempt to free himself and flee from the police or engage in some other conflict. Moreover, this entire exchange occurred over a matter of seconds. In other words, as Officer Altman is approaching Mr. Lewis and his colleagues, he essentially has limited time to react. One must remember this incident occurred at a gas station which is frequented by the public. While an elbow drop may not be the most effective way to diffuse a situation, it was not objectively unreasonable. See gen. *Schliewe*, 138 Fed. App'x at 722.

2. **Actions of Officer Ben DeGreen**. Under Sixth Circuit Court of Appeals precedent, active resistance has been interpreted to include "physically struggling with, threatening, or disobeying officers." *Cockrell v. City of Cincinnati*, 468 F.App'x 491, 495 (6th Cir. 2012). "If a suspect actively resists arrest and refuses to be handcuffed; officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Co. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012).

In *Caie v. West Bloomfield Township*, officers responded to a welfare check on a 19-year-old who was depressed, suicidal, and intoxicated. 485 F.App'x 92 (6th Cir. 2012). The responding officers found plaintiff in a lake and told him to come out. *Id.* at 94. After resisting the officers' initial requests, the plaintiff eventually complied. *Id.* Emergency personnel tried to get plaintiff to voluntarily go to the hospital, but he refused. *Id.* After a "several minute[]" standoff, an altercation occurred, and the plaintiff was taken to the ground. *Id.* Plaintiff laid on the ground with his arms underneath; he was told to place his arms behind his back, but he refused. *Id.* One officer drive-stunned the plaintiff, gaining compliance of the suspect and

placed him in custody. *Id.* The Sixth Circuit Court of Appeals affirmed the District Court's grant of summary judgment holding the officers' use of force was not unreasonable and therefore did not violate plaintiff's constitutional rights. *Id.*

Similarly in *Rudlaff v. Gillispie*, an officer pulled the Plaintiff over for a traffic offense. *Gillispie*, 791 F.3d at 640. Plaintiff was ordered to exit the vehicle and when officers tried to place him in handcuffs, Plaintiff "swung" his arms. *Id.* Plaintiff resisted at least 2 attempts to place him in handcuffs but the Plaintiff just "ball[ed] up". *Id.* Officers performed a knee strike, which did not success and he was tasered. *Id.* The Sixth Circuit concluded officers face a "'dichotomy' … when a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Id.* at 641. Under the circumstances in this case, Plaintiffs constitutional rights were not violated. *Id.*

Here, Officer Ben DeGreen was the second officer to arrive to the scene. Officer DeGreen's dash cam footage shows Plaintiff's hands were in front of him and Mr. Lewis was freely moving around before he is taken to the ground. Under the circumstances Officer DeGreen encountered, Mr. Lewis had fled from Tennessee Highway Patrol moments earlier and ignored officers' commands, so Officer DeGreen took him to the ground. If Officer DeGreen did not take Mr. Lewis to the ground, a number of different interactions could have occurred. For instance, Mr. Lewis could have become violent and a physical altercation ensued, or Mr. Lewis could have run, posing a danger to the public at large. Similar to *Caie*, it was objectively reasonable for Officer DeGreen to take Mr. Lewis to the ground for the safety of all, especially when the officer's orders were being disregarded. The Sixth Circuit Court of Appeals has concluded:

> [Courts] must avoid substituting … personal notions of proper police procedure for the instantaneous decision of the officer at the

> scene. [Courts] must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Dickerson v. McClellan*, 101 F.3d 1151, 1163 (6th Cir. 1996) (*quoting Smith v. Freeland*, 954 F.2d 343, 347 (6th Cir. 1992)).

Once Mr. Lewis was on the ground, the video depicts Mr. Lewis is compliant when suddenly he begins kicking and flailing, knocking Officer Lucas Hensley off and to the side. In response, Officer DeGreen drive-stunned Mr. Lewis on the left and right upper back in an attempt to gain compliance and prevent Mr. Lewis from escaping or to discourage resistance. As stated above, under the Fourth Amendment analysis, the reasonableness of force is judged from an objectively reasonable officer on the scene. *Graham*, 490 U.S. at 396.

Here, Officer DeGreen submits that the use of force under the circumstances was entirely reasonable. In the split seconds leading up to the use of the taser, Mr. Lewis had begun to flail and actually knocked Officer Lucas Hensley off of him. At that specific moment in time, Officer DeGreen maintained control of Derrick Lewis with Officer Altman responding moments later. Under the circumstances, Officer DeGreen was faced with an almost instantaneous decision. His response was similar to the circumstances officers encountered in the *Caie* and *Gillispie* cases. *Caie,* 485 F.Appx. 94; *Gillispie*, 791 F.3d 638. In both of the aforementioned cases, the Plaintiff refused to provide the officers with his hands, constituting resistance. *Id.* In this case Plaintiff refused to voluntarily provide his hands, so officers could uncuff his hands in front and securely place his hands behind his back. Instead, Mr. Lewis began to kick, which led Officer DeGreen to reasonably conclude he was resisting. Officer DeGreen submits Mr. Lewis' constitutional rights were not violated by drive-stunning him twice.

11
Case 2:20-cv-00114-JRG-CRW    Document 56    Filed 12/16/21    Page 11 of 16    PageID #: 227

3. **Plaintiff's Alleged Rib Injury**. In Plaintiff's Amended Complaint, he alleges his ribs were injured due to the named officers' actions. However, the video demonstrates Lieutenant Quillin (a non-party) delivered a knee strike to Mr. Lewis' right ribs. The law recognizes officers must make split-second judgment calls. *Graham*, 490 U.S. at 396-397. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. at 396. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier,* 533 U.S. at 205, 206. "[W]hen a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him. *Gillispie*, 791 F.3d at 640

In this case, Lieutenant Quillin did not know Plaintff's hands were cuffed underneath his body. Observing several officers dealing with a suspect upon arriving to the scene could lead a reasonable officer, under the totality of the circumstances, to conclude the suspect was engaged in active resistance. Even though Lieutenant Quillin is not a party to the lawsuit, Defendants wanted to briefly address this Honorable Court; his actions were objectively reasonable under the circumstances and no violation of Plaintiff's Fourth Amendment rights occurred based on the knee strike.

D. **Whether the Rights Violated were "Clearly Established".**

Assuming, *arguendo*, this Honorable Court finds the officers' conduct was unreasonable based on the totality of circumstances, Plaintiff must also show that the right violated is "sufficiently clear that every reasonable official would have understood that what he was doing violates that right." *Mullenix v. Luna, 136 S. Ct. 305, 308, 577 U.S. 7, 11-12, 193 L. Ed. 2d 255, 259* (2015) *(quoting Reichle v. Howards, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985, 989 (2012)).* In *Lyons v. City of Xenia*, the Sixth Circuit Court of Appeals concluded there are two methods a plaintiff may utilize to demonstrate officers violated a clearly-established right,

[1] "where the violation was sufficiently 'obvious' under the general standards of constitutional care that the plaintiff need not show 'a body' of 'materially similar' case law" and [2] where the violation is shown by the failure to adhere to a "particularized" body of precedent that "squarely governs the case". *Lyons*, 417 F.3d 565, 579 (6th Cir. 2005) (*quoting Brosseau v. Haugen*, 543 U.S. 194 (2004)). Generally, an officer is entitled to qualified immunity if his actions fall "in the 'hazy border between excessive and acceptable force.'" *Id.* at 572. "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullinex v. Luna*, 572 U.S. at 12, 136 S.Ct. at 308 (*citing Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)*. "Officials are not liable for bad guesses and gray areas; they are liable for transgressing bright lines." *Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015) (*quoting Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

The first prong cited in *Lyons v. City of Xenia* is a fact-specific analysis similar to excessive force analysis; however, in order to establish that a defendant has violated a clearly-established right, the analysis must lead one to conclude that the officer's actions were "obvious". As arguments previously laid out for the three officers indicate, the Defendants would submit that is not the case here. Therefore, the Defendants submit it was not obvious the Defendants' actions would violate the clearly established right of Mr. Lewis. As a result, Mr. Lewis must show a "'particularized' body of precedent that 'squarely governs'" the circumstances Officers DeGreen, Hensley, and Altman faced on the day in question. *Id.* at 579. Based on the Sixth Circuit's holding in *Lyons v. City of Xenia*, Plaintiff bears the burden of providing this Honorable Court with a particularized body of law, but Defendants have not discovered a case on point. Therefore, Defendants would rely on the general rules announced in their previous argument regarding Officer Hensley's brandishing his pistol before reholstering it without firing any shots. Under the circumstances Officer Hensley encountered, coupled with

general guidance that has been adopted by the Sixth Circuit, Defendant Hensley submits he did not violate any clearly-established rights.

Regarding Officer Altman's actions, specifically landing his elbow on Mr. Lewis, "where video shows an arrestee actively resisting or refusing to be handcuffed, officers do not violate [one's] Fourth Amendment rights by using force – such as a knee strike and a taser deployment – in subduing him." *Estate of Collins v. Wilbourn*, 755 Fed. App'x. 550, 555 (6th Cir. 2018) (*citing Rudlaff*, 791 F.3d at 639, 642-643). Under those circumstances, it is averred such general standard regarding use of force would not place Officer Altman on notice that the force he utilized under the specific circumstances of this case violated Plaintiff's clearly established rights.

In *Lyons*, the Sixth Circuit noted that tackling generally rises to the level of excessive force where "(1) the claimants did not pose a tenable threat to the officer's safety, (2) the police did more than just tackle the suspect, or (3) the police did not have an adequate level of suspicion to justify any seizure at all." *Lyons*, 417 F.3d at 578. However, Officers are only liable for "transgressing bright lines". *Rudlaff*, 791 F.3d at 644. Here, Officer DeGreen states via his Affidavit that Mr. Lewis, who is 6' 3", 240 pounds, could still push, punch, and otherwise use his handcuffs as a weapon. Moreover, Mr. Lewis was walking around and failed to obey orders. Under these specific circumstances, an officer could also reasonably conclude that Mr. Lewis did pose a threat. Regarding the second prong, the video demonstrates both Officers Hensley and DeGreen were radioing for backup, then Officer Hensley proceeds with attempts to uncuff Mr. Lewis' hands from in front when he began kicking and flailing. Therefore, there was no additional action taken by Officer DeGreen until Mr. Lewis began kicking, flailing, or otherwise actively resisting the Officers' attempts to securely place him into custody. Finally, the Officers had adequate suspicion to justify seizure. In fact, before Mr. Lewis' escape, he was already in

14
Case 2:20-cv-00114-JRG-CRW   Document 56   Filed 12/16/21   Page 14 of 16   PageID #: 230

custody of Tennessee Highway Patrol and was being transported to Sullivan County Detention Center. As a result, the Officers were specifically responding to Mr. Lewis' escape and attempting to place him back into custody.

Lastly, the Sixth Circuit Court of Appeals has determined there are two lines of cases governing the use of tasers. Generally, "there is no clearly-established right not to be tasered if a suspect is actively resisting arrest"; however, if an individual is not actively resisting or is clearly detained his right to be free from taser is clearly established. *Brown v. Chapman*, 814 F.3d 447, 461-462 (6th Cir. 2016). For reasons contained in this Memorandum, Officer DeGreen submits he did not violate Plaintiff's clearly established rights.

The Defendants have not found a case on point indicating the type of force used by the Officers is excessive under the circumstances where a suspect breaks out of a police cruiser, torques his body where his hands are handcuffed but in front of his body, and begins to actively resist or escape after being taken to the ground in a public place. Therefore, Officers DeGreen, Hensley, and Altman submit they are entitled to qualified immunity as to excessive force claims alleged by Derrick Lewis in this cause of action.

### III. CONCLUSION

For the reasons contained in this Memorandum of Law, the Defendants submit that the claims alleged by Derrick Lewis should be dismissed against them in their individual capacities.

Respectfully submitted,

*s/ J. Christopher Rose*
J. Christopher Rose (BPR #028106)
West & Rose
P.O. Box 1404
Kingsport, TN 37662
423-246-8176
*Attorney for Defendant Officers
   DeGreen, Altman and Hensley*

## CERTIFICATE OF SERVICE

       I, the undersigned, J. Christopher Rose, hereby certify that on the 16th day of December, 2021, an exact copy of the foregoing ***Memorandum of Law in Support of Motion for Summary Judgment*** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties or their counsel listed upon the filing receipt. All other parties or their counsel, if any, will be served by regular United States Mail. Parties or their counsel may access this filing through the Court's electronic filing system.

                                                             s/J. Christopher Rose