UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| DERRICK LEWIS, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No: 2:20–CV–00114–JRG–CRW |
| | ) |
| KINGSPORT POLICE DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. [Doc. 54]. Plaintiff did not respond to the motion. For the reasons stated below, Defendants' Motion for Summary Judgment, [Doc. 54], is GRANTED.

I. Background

On July 4, 2019, two individuals were under arrest and in the back of a Tennessee Highway Patrol vehicle. [Trooper Draine Aff., Doc. 54-1, PageID 198–99; Doc. 57, Video: Tennessee Highway Patrol]. One individual was Plaintiff Derrick Lewis. [Doc. 54-1, PageID 198]. He was under arrest for an outstanding warrant. [*Id.*]. While in the patrol vehicle, Plaintiff kicked out a window. [*Id.*; Doc. 57, Video: Tennessee Highway Patrol]. At some point, he managed to move his handcuffed hands from behind his back to in front of him. [Doc. 54-1, PageID 198]. Both individuals escaped from the patrol vehicle and fled. [*Id.* at PageID 198–99].

After leaving the vehicle, Plaintiff ran down Stone Drive, a busy road in Kingsport, Tennessee. [*Id.* at PageID 199]. He eventually ran to the perimeter of a gas station, where Officer

1

Lucas Hensley of the Kingsport Police Department found him. [Officer Hensley Aff., Doc. 54-2, PageID 201]. Officer Hensley exited his car and drew his firearm. [*Id.*]. He ordered Plaintiff to get on the ground, and Plaintiff did not comply. [*Id.*]. Then, Officer Ben DeGreen arrived, and his dash camera recorded the events after his arrival. [Officer DeGreen Aff., Doc. 54-5, PageID 207]. In his affidavit, Officer DeGreen stated that he noticed Plaintiff's handcuffed hands were in front of him, so Plaintiff "could throw punches, push, and use the handcuffs as a weapon." [*Id.*]. He also told Plaintiff to get on the ground, which Plaintiff did not do. [*Id.*]. Officer DeGreen then tackled Plaintiff. [*Id.*; Doc. 57, Video: Kingsport Police Department, 3:14]. After tackling him, the officers pinned Plaintiff to the ground and kneeled on him. [Doc. 57, Video: Kingsport Police Department, 3:20–32].

While on the ground, Plaintiff continued to move around, managing to knock Officer Hensley off of him. [Doc. 54-2, PageID 202; Doc. 57, Video: Kingsport Police Department, 3:35–42]. During this time, Officer Jesse Altman arrived. [Officer Altman Aff., Doc. 54-3, PageID 203; Video: Kingsport Police Department, 3:42–45]. Officer Altman elbow-dropped[1] Plaintiff's head and upper torso. [*Id.*]. Then, Officer DeGreen drive stunned Plaintiff twice with a taser. [Doc. 54-5, PageID 207–08]. All of those events occurred in approximately thirty seconds.

As Officers Hensley, DeGreen, and Altman, tried to uncuff Defendant's handcuffs so that they could re-cuff his hands behind his back, another officer arrived, Lieutenant Justin Quillen. [Lieutenant Quillen Aff., Doc. 54-4, PageID 205]. Lieutenant Quillen did not know that Plaintiff was handcuffed at all, and he kneed Plaintiff in the ribs on his right side. [*Id.*]. The officers

---

[1] Defendants' memorandum of law describes Officer Altman's actions and states that Officer Altman "ran up and landed on Mr. Lewis'[s] head and torso with his elbow." [Doc. 56, PageID 219].

2

eventually unlocked the handcuffs and re-cuffed Plaintiff with his hands behind his back. [*Id.*]. Finally, the officers transported Plaintiff to the Sullivan County Detention Center. [*Id.*].

On June 9, 2020, Plaintiff filed a motion to proceed *in forma pauperis* and filed a complaint bringing actions against "Kingsport City Police Department" and "Bristol Regional Hospital." [Docs. 1–2]. He brought § 1983 claims for police brutality and denied medical treatment from Bristol Regional Hospital. [Doc. 2, PageID 7, 10].

The magistrate judge filed a report and recommendation recommending the dismissal of the claims against Kingsport City Police Department and Bristol Regional Hospital. [Doc. 12]. Additionally, the magistrate judge recommended permitting Plaintiff to amend his complaint to bring claims against individual officers. [*Id.*]. Plaintiff filed a motion to amend his complaint, seeking to name three officers as defendants: Officer Jesse Altman, Officer Ben DeGreen, and Officer Lucas Hensley. [Doc. 14]. After receiving Plaintiff's motion, the Court vacated the Magistrate Judge's report and recommendation so that the Magistrate Judge could take into consideration the motion to amend. [Doc. 15]. The Magistrate Judge gave Plaintiff an opportunity to file a supplement, [Doc. 16], and Plaintiff did so, [Doc. 17].

After receiving the supplement, the Magistrate Judge granted the motion to amend his complaint and ordered him to file an amended complaint. [Doc. 18]. Then, Plaintiff filed an amended complaint. [Doc. 19]. In his amended complaint, Plaintiff alleges that he was in the back seat of a patrol car when the other passenger escaped. [*Id.* at PageID 80]. Next, according to Plaintiff, he was standing by a gas station (he does not state how he exited the patrol car), and Kingsport City Police surrounded him with their guns drawn. [*Id.*]. Then, he told them that he was handcuffed, and they tackled him. [*Id.*]. Plaintiff goes on to describe being stricken and pinned to the ground by Officer Jesse Altman, Officer Ben DeGreen, and Officer Lucas Hensley, and subject

3

to a taser until he passed out. [*Id.*]. When he woke up, he had used the bathroom on himself and could not sit up due to pain in his ribs. [*Id.*]. He was transported to the jail where the medical staff concluded he needed to be sent to the hospital due to a broken rib. [*Id.* at 81]. Plaintiff discussed his medical treatment at the Sullivan County Detention Center, but he does not appear to bring a claim for inadequate medical care from Sullivan County. [*See id.*].

After Plaintiff filed the amended complaint, the Magistrate Judge filed a report and recommendation. She recommended granting the motion to proceed *in forma pauperis* but recommended dismissing the Kingsport Police Department and Bristol Regional Hospital. [Doc. 20]. Plaintiff filed objections to the report and recommendation, [Doc. 21], but this Court overruled the objections, [Doc. 23]. The Court adopted the report and recommendation, dismissed Kingsport Police Department and Bristol Regional Hospital, and the case proceeded to service and discovery. [*Id.*]. Discovery concluded in this matter on May 17, 2022, [Doc. 43, PageID 153], and Defendants filed a motion for summary judgment, [Doc. 54]. Plaintiff did not file a response to the motion for summary judgment.

## II. Standard

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *id.* at 325, at which point the nonmoving party,

4

to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (6th Cir. 2015).

### III. Discussion

As an initial matter, the Court notes that Plaintiff's failure to respond to Defendants' motion for summary judgment does not entitle Defendants to a walkover. *See Sammons v. Baxter*, No. 1:06–CV–137, 2007 WL 325752, at *2 (E.D. Tenn. Jan. 31, 2007) ("[A party's failure to] oppos[e] . . . a summary judgment motion does not automatically result in the Court granting the motion. Rather, pursuant to well-established precedent, in the context of a summary judgment motion, the Court must still examine the record and determine whether the movant has met its burden . . . . Thus . . . a party seeking summary judgment must meet its burden as movant regardless of whether

5

the nonmovant files a response[.] (citing *Stough v. Maryville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); *Wilson v. City of Zanesville*, 954 F.2d 349, 351 (6th Cir. 1991); *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991))). The Court will therefore hold Defendants to their burden and not impart any leeway to them based on the fact that Plaintiff did not respond to their motion.

Defendants bring two arguments as to why their motion should be granted. First, Defendants argue that Plaintiff's claim fails as a matter of law under 42 U.S.C. § 1983. Second, Defendants raise the defense of qualified immunity. Because Plaintiff's § 1983 claim fails as a matter of law, the Court will not address qualified immunity.

a. Title 42, Section 1983 of the United States Code

Section 1983 of Title 42 of the United States Code permits a claim for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant can be liable "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of either a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id.* at 511. "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

A violation of a constitutional or federal statutory right is a prerequisite to a claim under § 1983 because § 1983 "does not confer substantive rights" on a plaintiff; rather, it is merely a conduit through which a plaintiff may sue another to "vindicate rights conferred by the

Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *see Graham v. Conner*, 490 U.S. 386, 393–94 (1989) ("As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (quotation omitted)). "The first inquiry in any § 1983" claim is therefore "to isolate the precise constitutional violation with which [a defendant] is charged[.]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Graham*, 490 U.S. at 394 ("[A]nalysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." (citation and footnote omitted))

The second requirement, that a person act under the color of state law, does not appear to be at issue in the case.

Plaintiff brings claims for injuries he received during his seizure on July 4, 2019. The Court reads these as § 1983 claims for the use of excessive force under the Fourth and Fourteenth Amendments to the United States Constitution. Generally, under a § 1983 claim for excessive force, any officer held liable for the use of force must personally apply excessive force or know of the misconduct and do nothing to stop it. *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982). While officers cannot use excessive force, the Fourth and Fourteenth Amendments permit the use of reasonable force. *Bennett v. Krakowski*, 671 F.3d 553, 560–61 (6th Cir. 2011). For actions occurring during an arrest, the use of force "should be analyzed under the Fourth Amendment and its 'objective reasonableness' standard." *Id.* at 61 (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989). This objective standard evaluates the totality of the circumstances. *Id.* A court's consideration should include, "the [1] severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

(quoting *Graham*, 490 U.S. at 396). The reasonableness of the use of force is evaluated from a reasonable officer's perspective and with the understanding that officers must make split-second decisions. *Id.* With that, the Court will analyze the actions of the three named Defendants individually.

    b. Officer Lucas Hensley

Plaintiff names Lucas Hensley as a person who violated his rights. Officer Hensley was the first officer on the scene after Plaintiff fled the law enforcement vehicle. [Officer Hensley Aff., Doc. 54-2, PageID 201]. He drew his weapon and ordered Plaintiff to the ground. [*Id.*]. Plaintiff did not comply. [*Id.*]. Additionally, Officer Hensley helped pin Plaintiff to the ground. [*Id.*]. Plaintiff eventually knocked Officer Hensley off of him. [*Id.*].

Given the totality of the circumstances, Officer Hensley did not use excessive force. Officer Hensley was the first person to intercept an individual who escaped a law enforcement vehicle after being detained, a very serious situation. While he helped pin Plaintiff to the ground, Officer Hensley, based on the undisputed material facts, used an objectively reasonable amount of force to apprehend a fleeing person who was not complying with orders and resisting. During this time, Plaintiff resisted and managed to knock Officer Hensley off of him, creating a danger to others. Further, although Officer Hensley drew his gun, drawing a gun is not a use of unreasonable force under these circumstances, where Plaintiff was fleeing after escaping a patrol vehicle and was failing to comply with orders. *See Anderson v. Antal*, 191 F.3d 451, 1999 WL 717993, *3 (6th Cir. 1999) (Table) ("[T]he fact that from the officers' contemporaneous perspective, [the plaintiff] appeared to be refusing a lawful order to pull over, we are also untroubled by the fact that the officers initially approached [the plaintiff] vehicle with their guns drawn.")

    c. Officer Ben DeGreen

8

Officer Ben DeGreen was the second officer on the scene. When he arrived, he asked Plaintiff to go to the ground, but Plaintiff did not comply. Officer DeGreen then tackled Plaintiff. Officer DeGreen noticed that Plaintiff was handcuffed with his hands in the front of him which would still allow Plaintiff to punch or push. While struggling on the ground with Plaintiff and after Plaintiff knocked Officer Hensley off of him, Officer DeGreen drive stunned Plaintiff twice.

Like Officer Hensley, Officer DeGreen did not use excessive force. He was the second officer to intercept an individual who had fled a law enforcement vehicle, and Plaintiff was not properly restrained. With his hands cuffed in front of him, Plaintiff could still punch and push. Further, Plaintiff was not complying with officers' instructions and had knocked Officer Hensley off of him. While the use of a taser may sometimes lead to the use of excessive force, under these circumstances, where Plaintiff was actively resisting, the use of a taser twice was not excessive. *See Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012) (discussing generally that "[i]f a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him" but it may be excessive force if "the suspects were compliant or had stopped resisting."); *see generally Williams v. Sandel*, 433 F. App'x 353, 362 (6th Cir. 2011) (finding that tasing an individual thirty-seven times, using batons, and pepper spray was not excessive under the circumstances). Under these circumstances, with the seriousness of the situation and Plaintiff's active resistance, Officer DeGreen did not use excessive force.

d. Officer Jesse Altman

Officer Jesse Altman arrived on the scene after Plaintiff had been taken to the ground. However, when he arrived, Officer Hensley had been knocked partially off of Plaintiff. When he

9

arrived, Officer Altman elbow-dropped Plaintiff in the head and upper torso and helped restrain him.

As noted by Defendant, the Sixth Circuit has found a similar use of force reasonable under the circumstances. In *Schliewe v. Toro*, a plaintiff in jail attempted to escape from a holding area. *Schliewe v. Toro*, 138 F. App'x 715, 722 (6th Cir. 2005). An officer punched the plaintiff, breaking his jaw. *Id.* at 718. Given the split-second decision making required, the Sixth Circuit determined, "[The officer] reacted instinctively to [the plaintiff's] attempted escape and from the perspective of a reasonable officer on the scene, the blow was not objectively unreasonable." *Id.* at 722.

While in hindsight, there may have been alternatives to an elbow-drop and actions on that day, Officer Altman's actions, from his perspective at the time of the conduct, were objectively reasonable. Plaintiff fled from a patrol vehicle and was resisting arrest. Plaintiff had already knocked Officer Hensley off of himself. Given those circumstances, Officer Altman's actions were not unreasonable.

   e. Conclusion

Here, the undisputed material facts of the case, in the light most favorable to Plaintiff, show that the elements for an excessive force claim under § 1983 are not present. Plaintiff must show that the use of force was excessive for his constitutional rights to be violated, and the undisputed facts of the case do not show that. The facts show that Plaintiff escaped from a law enforcement vehicle and had the use of his hands even though he wore handcuffs. The facts show that once officers caught him, he did not comply with their instructions, continued to resist arrest after he was taken to the ground, and created a dangerous situation. In response, Defendants applied various uses of force, including a taser and elbow-drop, to restrain Plaintiff. Under the

circumstances and given the undisputed material facts, the named Defendants used a reasonable amount of force.

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment, [Doc. 54], is GRANTED.

So ordered.

ENTER:

                                              s/J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE